UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH LEONE,

       Plaintiff,

v.                                     Case No: 8:14-cv-800-T-27TBM

ALLIANCE FOODS, INC.,

       Defendant.

_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment and Incorporated

Memorandum of Law (Dkt. 30), and Plaintiff's response (Dkt. 42). Upon consideration, Defendant's

Motion is GRANTED in part and DENIED in part.

## I.     BACKGROUND

Plaintiff worked as Territory Merchandising Representative ("TMR") for Alliance (Leone

Dep., at 24:8-20; Saberton Dec., ¶ 4). Alliance is a food broker, retailer, sales and merchandising

company and sells various food products to Save-A-Lot grocery stores ("SAL").( (*Id.,* ¶ 2).) After

Leone missed work because of an eye injury, he was terminated for violating Alliance's "no call/no

show" policy (Dkt. 30-18). In this action, Leone alleges he was subject to discrimination and

retaliation in violation of the Americans with Disabilities Act ("ADA"), and Florida Civil Rights Act

("FCRA"). He also alleges Alliance failed to pay him overtime wages and other wages owed to him

in violation of the Fair Labor Standards Act ("FLSA") and Florida common law.

The job description for a TMR included twelve job functions: developing a rapport and trust

with SAL District Managers; optimize production distribution; best in class new item shelf speed;

implement strategic merchandising initiatives; provide data input for manufacturing sales and merchandising information; coordinate, track and measure market price checks; execute all company merchandising plans and activities at the store level; ability to lift 50+ pounds; maintain confidentiality; follow company policy and procedures; contribute to team effort by accomplishing goals; maintain professional and technical knowledge (Dkt. 42-1).

Leone testified that 95 percent of the time, he performed "merchandising" duties, which included "doing the audits, driving to stores, gathering competitor information, [and] taking pictures in competitor stores." (Leone Dep. at 193:1-5). The other 5 percent of the time he spent making sales. (*Id.* at 192:22-25). According to Leone, he did not obtain orders from SAL store managers, or obtain any contracts from SAL. (*Id.* at 193:10-16). He rarely utilized any discretion to determine where products Alliance managed were actually placed in SAL stores, except for once every six months. (*Id.* at 194:2-16).

Leone's initial offer letter stated that he would be "classified as salaried exempt, which means [he was] not eligible for overtime pay." (*Id.* at 35:25 - 36:1-14; Dkt. 30-3). Leone accepted a salary of $1,346.15 per pay period, which was increased several times throughout his tenure. (Saberton Dec., ¶ 5). Leone also attended sales training sessions with Alliance, as well as TMR Meetings, which included sales training (Leone Dep. at 179:14-17; 34:14-15, 34:23-25 – 35:1; 66:13-20; Saberton Dec., ¶ 10). When working, Leone did not report to an Alliance office. Rather, he visited SAL stores in his territory and had the discretion to determine the order of the SAL stores he visited and when, the order in which he completed assigned tasks, and generally the hours he spent at each store (Leone Dep. at 87:2-25;88:1-11; Saberton Dec., ¶ 11). Leone reported to Retail Merchandising Supervisor Anas Elghaity. (*Id.*, ¶ 5).

2

Leone suffered an eye injury in late March of 2013, which resulted in a staph infection and corneal infiltration in his left eye. (Leone Dep. at 121-122; *see also* Dkt. 42-3). Leone was first treated by a doctor on March 30, 2013. *Id.* Leone testified that he informed Elghaity about his eye injury on the following Monday, April 1, 2013. (Leone Dep. at 122:1-2). On April 5, 2013, Leone informed Elghaity that he had a "corneal infiltrate," had seen an ophthalmologist who told him he had a 30% chance of losing his eye, that he was on a "battery of medicines with hot compresses," and that he had a follow up appointment the following Monday, April 8, 2013 (Elghaity Dec. ¶ 4; Dkt. 30-14). Leone requested the entire week off, which Elghaity approved.

The morning of April 15, 2015, Leone e-mailed Elghaity, telling him: "I have not been released from the doctor yet. I still have a regiment of drops, creams and hot compresses. I have to call today and get another doctors appointment. I will keep you posted." Elghaity responded "[t]hanks Ken, hope you get better Sir. Please remember to put time into Paychex." (Dkt. 42-6; *see also* Elghaity Dep. at 57:1-12). Later that morning, Elghaity responded via e-mail and asked Leone to send him a doctor's note stating how long he would need to be absent. (Elghaity Dec., ¶ 7; Dkt. 30-16). Elghaity also sent Leone a text message informing him that he sent him an e-mail which required a response. (Elghaity Dec., ¶ 8; Dkt. 30-17). Leone did not respond to either the e-mail or the text message and sent no further correspondence that day. (Elghaity Dec., ¶ 9). Leone did not contact anyone at Alliance the next day, April 16, 2013. (*Id.*, ¶ 10).

On April 17, 2013, Elghaity called Leone, leaving him a voicemail stating that Leone needed to call back to report his status so Alliance could plan for future absences and coverage. (*Id.*, ¶ 11). Leone did not return the call. (*Id.*, ¶ 12). On Thursday, April 18, 2013, Brenda Royer, Alliance's Director of Human Resources, called Leone and left a voicemail telling him that he needed to call

3

Alliance back by the end of the day, or Alliance would assume he had decided to voluntarily quit without notice. (Royer Dep. at 8:12-19, 49:7-9). Leone did not respond. (Elghaity Dec., ¶ 12).

On April 19, 2013, Alliance sent Leone a termination letter explaining its decision to terminate Leone for voluntary job abandonment consistent with its Absentee Policy. (Royer Dep. at 13:10-13; Dkt. 30-18).

## II.   STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All facts are viewed and all reasonable inferences are drawn in the light most favorable to the non-moving party, here, Plaintiff. *See Scott v. Harris,* 50 U.S. 372, 378 (2007).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598

4

F.3d 812, 815 (11th Cir. 2010). The nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

## III.   DISCUSSION

### A.   *FLSA Overtime Wages*

In Count I, Leone asserts a claim for overtime wages under the Fair Labor Standards Act ("FLSA"). He alleges that he worked overtime hours but was not compensated by Alliance for those hours in accordance with the FLSA. In Count II, Leone asserts a claim for unpaid wages, specifically, for three days of vacation pay he alleges is due him.

With respect to Leone's overtime wage claim, Alliance contends that Leone falls under the FLSA's Outside Sales Exemption and is therefore not entitled to overtime compensation. Leone submits there is material issue of fact as to whether he qualifies as an exempt employee. The employer bears the burden of proving that an employee qualifies as an outside salesman. *Reyes v. Goya Foods, Inc.*, 549 Fed. App'x 876, 877 (11th Cir. 2013).

The FLSA recognizes certain categories of exempt employees who are not entitled to recover overtime compensation for hours worked in excess of forty hours. One such exemption is for an "employee employed in . . . the capacity of outside salesman." 29 U.S.C. § 213(a)(1). An outside sales employee is defined as:

> any employee: (1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a)(1)-(2). An outside sales employee makes sales at the customer's place of

5

business. 29 C.F.R. § 541.502.

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. The primary duty test requires consideration of a number of factors, including, but not limited to, "'the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing the exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.'" *Gregory v. First Title Of Am., Inc.*, 555 F.3d 1300, 1308 (11th Cir. 2009) (quoting 29 C.F.R. § 541.700(a)). In addition, the amount of time spent performing exempt work can be used as a guide in determining whether exempt work is the primary duty of an employee. 29 C.F.R. § 541.700.[1] However, the character of the position, rather than the percentage of time being spent performing pure sales, is critical to evaluating whether an employee's primary duty is sales. *See id.*

The DOL has explained that "[e]mployees have a primary duty of making sales if they 'obtain a commitment to buy' from the customer and are credited with the sale." 69 Fed.Reg. 22122, 22162–63 (Apr. 23, 2004). The employer must demonstrate that the employee "in some sense made a sale" as opposed to merely paving the way for other salesmen. *Gregory*, 555 F.3d at 1308.

A material question of fact exists as to whether Leone's primary duty was sales. While Alliance representatives and employees characterize Leone's job as that of a sales representative.[2]

---

[1] "Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700.

[2] "[A] job title alone is insufficient to establish the exempt status of an employee. *Gregory*, 555 F.3d at 1307.

6

However, Leone testified that 95 % of his duties encompassed merchandising duties which included conducting audits, driving to SAL stores, gathering competitor information, and taking pictures in competitor stores (Leone Dep., Dec. 3, Dkt. 35 at 193:1-5). According to Leone, he did not obtain orders or contracts from Save-A Lot stores, and rarely utilized discretion to determine where products were actually placed (*Id.* at 193:10-16, 194:2-16). He also testified that his duties consisted of mostly merchandising and he did not do a lot of promotional work (*Id.* at 195:13-23). Viewing the facts in Leone's favor, a material issue of fact exists as to whether he qualifies as an outside sales employee.

### B.    *Unpaid Wages Claim*

With respect to Leone's claim for vacation pay asserted in Count II, Alliance suggests, in a footnote, that this claim is moot because Alliance paid Leone the vacation pay to which he was entitled. Leone disagrees, and contends that settlement offers do not render an action moot if there is no offer of judgment in his favor. Moreover, he contends that he is entitled to attorney's fees incurred in prosecuting this claim. Because Alliance has paid Leone the vacation pay to which he was entitled, this claim (Count II) will be dismissed. However, jurisdiction will be reserved to determine the amount of attorney's fees, if any, Leone is entitled to under Florida Statute § 448.08.

### C.    *ADA/FCRA Disability Discrimination*

In Count III, Leone asserts a claim of disability discrimination under the ADA. In Count V, he asserts a claim of handicap discrimination under FCRA. In both counts, he alleges that Alliance refused his request for a reasonable accommodation for his disability. The fundamental problem for Leone is that he did not suffer from a disability.

The ADA prohibits employers from discriminating against "a qualified individual on the

7

basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The FCRA likewise makes it unlawful for an employer to "discharge or fail to refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... handicap...." Fla. Stat. § 760.10. Since the FCRA is patterned after the ADA, FCRA claims are analyzed under the same standards. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).

To establish *prima facia* case of employment discrimination under the ADA, a plaintiff must demonstrate that: (1) he has a disability; (2) is a qualified individual with or without a reasonable accommodation; and (3) he was unlawfully discriminated against because of the disability. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 -1357 (11th Cir. 2004). To prove unlawful discrimination in a failure to accommodate claim such as Leone's, the plaintiff must show that he was discriminated against as a result of the defendant's failure to provide a reasonable accommodation. *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. App'x 679, 681 (11th Cir. 2010); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). The plaintiff has the burden of identifying the accommodation and demonstrating that the accommodation would have allowed him to perform his job's essential functions. *Lucas*, 257 F.3d at 1255–56.[3]

Alliance contends that Leone cannot maintain a claim for violations of the ADA or FCRA because (1) he did not suffer from a "disability" or "handicap;"(2) he was not a "qualified

---

[3] The *McDonnell Douglas* burden-shifting is inapplicable to reasonable accommodation claims. *Nadler v. Harvey*, No. 06-12692, 2007 WL 2404705, at *9 (11th Cir. Aug. 24, 2007).

individual"; (3) he neither requested an accommodation nor provided any indication that an accommodation was necessary due to a disability or handicap; and (4) he was terminated for a legitimate, non-discriminatory reason.[4] For the reasons discussed below, Leone cannot establish that he suffered from an actual disability or that he requested an accommodation. His ADA and FCRA claims therefore fail.

### i.     Actual Disability

The ADA defines "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C.   § 12102(2). Leone alleges only that he had an actual disability. Alliance argues that Leone's eye injury did not substantially limit his ability to perform any major life activity.

A determination of disability under the ADA involves a three-step analysis. *Rossbach*,  371 F.3d at 1357 (citing *Bragdon v. Abbott,* 524 U.S. 624 (1998)). First, the plaintiff must be impaired. Second, the life activity the plaintiff claims has been limited must be a major life activity under the ADA and its regulatory scheme.[5] Last, it must be determined whether the impairment "substantially limits" that life activity. Mere proof of the existence of a physical impairment, without demonstrating

---

[4] Because the relevant events took place after the ADA Amendments Act of 2008 ("ADAAA") became effective on January 1, 2009, the post-ADAAA version of the ADA governs. *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014).

[5] The regulations interpreting the Rehabilitation Act of 1973 define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii); 29 C.F.R. § 1630.2(I) (A "major life activity" includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working" as well as "the operation of a major bodily function."). If not expressly listed, the activity must be "significant" to everyday life. *Bragdon*, 524 U.S. at 638. "In determining other examples of major life activities, the term 'major' shall not be interpreted strictly to create a demanding standard for disability."29 C.F.R. § 1630.2(i)(2)..

a limitation on major life activities, is not sufficient to prove disability under the ADA. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998) (*citing Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 910 (11th Cir.1996), *cert. denied*, 522 U.S. 1030 (1997)).

Not every impairment will constitute a disability within the meaning of section 1630.2(j)(ii).[6] An individual like Leone, seeking to establish an actual disability within the meaning of the ADA, must show that he had a "physical or mental impairment that *substantially* limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2 (g)(1)(I). (emphasis added); *see Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1227 (11th Cir. 1999) (while heart disease constitutes an impairment, to constitute disability under the ADA, it must substantially limit a major life activity).

Without citing any regulatory provisions or authority, Leone presumptively asserts "[t]here is no question that Plaintiff suffered from a physical or mental impairment that substantially limited his ability to perform a major life activity . . . ." (Dkt. 42 at 15-16). Alliance, however, pointing to the "regiment [sic] of drops, creams and hot compresses" Leone was prescribed for a "common and easily treatable condition," and more importantly, the brief duration of Plaintiff's treatment before he was cleared to return to work, takes issue with respect to whether Leone's eye injury constituted a qualifying disability under the ADA.[7]

The ADAAA is clear that an impairment lasting or expected to last fewer than six months

---

[6] The regulations of the Equal Employment Opportunity Commission ("EEOC") may be looked to for guidance. *Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1311 (11th Cir. 2007).

[7] Alliance also argues that Plaintiff's impairment was "transitory and minor" and therefore he does not qualify as disabled for purposes of the ADA. However, 42 U.S.C. § 12102(3)(B)'s exclusion of transitory impairments-those lasting six months or less- applies only when an individual alleges he was regarded as having an impairment. 29 C.F.R. § 1630.2(j)(1)(ix).

can be substantially limiting and qualify as a disability under the ADA. *See* 29 C.F.R. § 1630.2(j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section."). However, while an impairment need not last for more than six months to be considered substantially limiting, "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." 29 C.F.R. Pt. 1630, App'x (citing Joint Hoyer–Sensenbrenner Statement, p. 5).

"The determination of whether an impairment substantially limits a major life activity requires an individual assessment." 29 C.F.R. § 1630.2(j)(iv). And the duration of the claimed limitation is to be considered in the determination of whether the claimed disability "substantially limits" a major life activity. "Substantially limits" means that the plaintiff is either (1) unable to perform a major life activity that the average person in the general population can perform; or (2) the plaintiff is "[s]ignificantly restricted as to the condition, manner or *duration* under which an individual can perform a particular major life activity as compared to the condition, manner, or *duration* under which the average person in the general population can perform that same major life activity." *Mullins v. Crowell,* 228 F.3d 1305, 1314 (11th Cir. 2000), quoting 29 C.F.R. § 1630.2(j)(1). (emphasis added).

Leone contends that his eye injury substantially limited his ability to see, work, drive, and stand up. Specifically, he testified he could not wear contacts or expose his eye to light, that it was not safe for him to drive, his vision "wasn't that good," he could not stand, and he had problems with his depth perception. Working, seeing and standing are listed in § 1630.2(I) as major life activities,

11

and driving is arguably "significant" to everyday life. Notwithstanding, since it is undisputed that any limitation on these activities resulting from Leone's eye injury was of short duration (just over two weeks), it cannot be said that they were *substantially* limited.

Leone first notified Alliance about his eye injury on April 2, 2013, his condition improved by April 18th, and he was cleared to return to work on April 22, 2013 (Leone Dec. 3, 2014 Dep., Dkt. 34 at 41:13-43:7; Dkt. 42-10). He has not seen a doctor for the injury since, and his eye is completely healed (*Id.* at 42:22-43:7). And it is undisputed that Leone suffered no permanent or long term impact from his injury. *See* 29 C.F.R. § 1630.2(j)(2). Moreover, the patient clinical summary for his cornea injury also belies any contention that his injury was substantially limiting under the ADA (*See* Dkt. 42-10). Leone was initially prescribed antibiotics at an Urgent Care facility and was instructed to return to the clinic only if not better in three days or if the condition worsened (*Id.*). Although his condition did worsen and he treated with an ophthalmologist, the prescribed treatments of medication and hot compresses resolved the injury in two to three weeks.

Because Leone's impairment was undisputedly short-term in duration and his vision was not totally impaired, it did not substantially limit a major life activity to constitute an actual disability under the ADA. *Cf. Meadows v. Holland USA, Inc.*, 2008 U.S. Dist. LEXIS 8596 (E.D. Ark. Feb. 4, 2008) (finding plaintiff could not show he suffered from a disability based solely on the temporary work restrictions imposed by his doctor as a result of a corneal laceration). This is consistent with findings in other cases that temporary, non-chronic impairments of short duration do not constitute disabilities.[8]

---

[8] *See, e.g., Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 468–69 (4th Cir.2002) (recuperation from back surgery was a temporary impairment that did not qualify as a substantially limiting disability under the ADA); *Ogborn v. United Food & Commercial Workers Union, Local No. 881*, 305 F.3d 763, 767 (7th Cir. 2002)

Leone relies on the ADAAA amendment providing that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of [certain] mitigating measures." 42 U.S.C. § 1202(4)(E)(I). This provision, however, applies to efforts to mitigate the symptoms of an impairment, not treatment that resolves a condition in its entirety.[9] *See* 29 C.F.R. Pt. 1630, App'x ("For an example, someone who began taking medication for hypertension before experiencing substantial limitations related to the impairment would still be an individual with a disability if, without the medication, he or she would now be substantially limited in functions of the cardiovascular or circulatory system."). Indeed, the statute addresses the ameliorative effects of *mitigating* measures, not measures that completely resolve an impairment. *See* 42 U.S.C.A. § 12102(4)(e).[10]

Since Leone's eye injury did not constitute an actual disability as defined by the ADA, he

---

(impairments such as broken limbs and appendicitis are not disabilities); *Lewis v. Florida Default Law Grp., P.L.*, No. 8:10-CV-1182-T-27EAJ, 2011 WL 4527456, at *4 (M.D. Fla. Sept. 16, 2011) (finding a plaintiff who could not perform major life activities for a period of two weeks due to the H1N1 virus not disabled); *Fuller v. Broward Cnty. Mass Transit (Office of Transp.)*, No. 08-61016-CIV, 2009 WL 112851, at *3 (S.D. Fla. Jan. 16, 2009) (allegations that the plaintiff underwent surgery to remove an appendix and had pinkeye on two occasions not enough to allege a disability); *McKenzie-Nevolas v. Deaconess Holdings LLC*, No. CIV-12-570-D, 2014 WL 518086, at *5 (W.D. Okla. Feb. 7, 2014), (finding no disability where the plaintiff's impairment, mastitis, was limited to one part of her body and was not chronic but temporary and of short duration); *Mastrio v. Eurest Servs., Inc.*, No. 3:13-CV-00564 VLB, 2014 WL 840229, at *5 (D. Conn. Mar. 4, 2014) (where the plaintiff may have suffered a short-term impairment caused by kidney stones, because no further limitations on any substantial life activities remained after receiving treatment, he was not considered disabled)

[9] Merrium-Webster Dictionary defines "mitigate" as "to cause to become *less* harsh or hostile; to make *less* severe or painful."

[10] Although the 2008 ADA Amendments reduced the degree of impairment required for protection under the ADA, and provide that the definition of disability is to be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted" by the law, 42 U.S.C. § 12102(4)(A), the EEOC regulations continue to recognize that impairments that only last a short time are typically not covered. *See* 29 C.F.R. Pt. 1630, App'x.

Moreover, the EECO Manual on Employment Discrimination explains that "[g]enerally, conditions that last for only a few days or weeks and have no permanent or long-term effects on an individual's health are not substantially limiting impairments. Examples of such transitory conditions are common colds, influenza, and most broken bones and sprains. The mere fact that an individual may have required absolute bed rest or hospitalization for such a condition does not alter the transitory nature of the condition." Section 902, Appendix F1 (June 2015).

does not satisfy the first element of a *prima facia* case under the ADA and FCRA.[11] Accordingly, Alliance is entitled to judgment as a matter of law on his accommodation claims in Counts III and V. Moreover, as will be discussed with respect to Leone's retaliation claims, he never requested an accommodation beyond the one week leave he asked for and was granted. He therefore cannot show that he was discriminated against by any failure to provide a reasonable accommodation.

### D.   ADA/FRCA RRetaliation

In Count IV, Plaintiff alleges retaliation under the ADA. In Count VI, he alleges retaliation under the FCRA. The ADA prohibits retaliation against an individual who "has opposed any act or practice made unlawful by this chapter or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).   To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) the suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Standard v. A.B.E.L. Services, Inc.,*  161 F.3d 1318, 1328 (11th Cir. 1998).

The *McDonnell Douglas* burden-shifting scheme applies to ADA retaliation claims. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).  To establish a *prima facie* case of retaliation under the ADA, a plaintiff must establish that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the adverse action and the protected activity. *Lucas v. W.W. Grainger*, 257 F.3d 1249, 1260 (11th Cir. 2001).  And disability retaliation claims require a plaintiff to meet the heightened

---

[11] Leone's disparate treatment claim fails for the same reason his accommodation claims fails--he was not disabled under the meaning of the ADA.

"but-for" causation standard. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2533 (2013); *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (applying but-for causation standard for Title VII retaliation claim, under *Nassar*, to ADA retaliation claim); *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (same); *Savage v. Secure First Credit Union*, No. 2:14-cv-2468, ___ F. Supp. 3d. ___, 2015 WL 2169135, at *4 (N.D. Ala. May 8, 2015) (same).

Leone contends that his request for a reasonable accommodation, in the form of leave to allow his eye to heal, constitutes statutorily protected activity. Alliance counters that Leone never requested an accommodation and therefore did not engage in statutorily protected activity, his termination was wholly unrelated to any alleged protected activity, and it had a legitimate, non-discriminatory and non-retaliatory reason for terminating him, which Leone has not shown to have been pretext for discrimination.

"[T]o satisfy the first element of the *prima facie* case, it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the statute." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d at 1328. A request for an accommodation can constitute a statutorily protected activity under the ADA if Leone had a good faith, objectively reasonable belief that he was entitled to the accommodations that he requested. *See id.* at 1328.

First, as Alliance correctly points out, there is no evidence that Leone requested an accommodation which was refused. The duty of an employer to provide a reasonable accommodation is not triggered unless a *specific demand* for an accommodation has been made. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999) (emphasis added). Indeed, from the record evidence cited by the parties in their briefing, it is undisputed that Leone

15

requested leave only for the week following his injury.[12] And that request was approved.

Second, Leone cannot show, even if he had requested a second week of leave, that he had an objectively reasonable belief that such a request was protected. It is apparent that he anticipated being released to return to work shortly after his first week of leave (Elghaity Dep., Dkt. 43 at 55:2-13; Leone Dep., Dec. 3, Dkt. 35 at 197:20-23; Dkt. 42-6 ("I have not been released from the doctor yet"). And it is undisputed that he failed to respond to several e-mails and telephone calls from Elghaity and Royer between April 15th and April 18th inquiring of his status and intentions, or even Royer's April 18th voice mail requesting a call back or it would be assumed that he had decided to voluntarily quit without notice.

 Leone admits that he failed to return calls or respond to e-mails from Alliance (Leone Dep., Dkt 35 at 123:24-25; 124:1-9). And it is undisputed that he failed to comply with Elghaity's request for a doctor's note stating how long he would need to be out, which implies that Alliance would have been receptive to additional leave if requested. Despite this, Leone maintains that Alliance did not accommodate his "disability" because "they didn't let [him] get well. Time was not given for [his] eye to heal." (Leone Dep., Dkt. 35 at 136:8-137:1).

Notwithstanding his unsupported complaints, Leone failed, for reasons which are not explained, to engage in an available interactive process with Elghaity and Royer and cannot now complain. *See Stewart*, 117 F.3d at 1287 ("Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate

---

[12] It is indeed curious that Leone does not counter Alliance's contention that there no evidence that he requested an accommodation which was refused. As noted, the briefing does not point to any such evidence. This court has no obligations to "parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1209 (11th Cir. 2006).

with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process.").

Considering these circumstances, and Leone's understanding that the limitations resulting from his injury would last only a relatively short time, any belief that he may have had that his major life activities were *substantially* limited was not objectively reasonable. Leone therefore fails to establish a *prima facie* case of retaliation under the ADA.

Even if Leone could establish a *prima facie* case of retaliation, he has not shown that Alliance's legitimate, non-discriminatory reason for terminating him was a pretext for discrimination. When Brenda Royer called Leone on Thursday, April 18th and left a voicemail telling him he needed to call back by the end of the day or it would be assumed he had decided to voluntarily quit, Leone had been absent for three consecutive days. Royer's representation in her voicemail was entirely consistent with Alliance's absentee policy. That policy, referred to by the parties as the "no-call/no-show" policy, provides:

> If you do not report to work and fail to notify the Company for 2 consecutive days as to the reason for your absence, the Company will consider you a voluntary quit and process your termination.

(Dkt. 30-18).

Royer's voicemail was left on the <u>third</u> day after Leone's last communication with Elghaity on Monday, April 15th. And Leone admits that he failed to notify Alliance for two consecutive days of the reason for his absence (Leone Dep. at 123:24-25; 124:1-9). Alliance's decision to terminate him based on this policy constitutes a legitimate, non-discriminatory reason which cannot be second guessed. Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[F]ederal courts do not sit to second-guess the business judgment of employers."); *Damon v. Fleming Supermarkets Of*

17

*Florida, Inc.,* 196 F.3d 1354, 1363 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."). In this instance, there was no mistake. Leone admits that he violated company policy.

Leone is required to rebut Alliance's legitimate, non-discriminatory reason for his termination by showing pretext, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Godwin v. Wellstar Health System, Inc.,* ___ Fed. Appx. ___, 2015 WL 3757354, 10 (11th Cir. 2015).[13] Leone does neither. He presents no evidence, only argument, in support of pretext. Nor does he present evidence that any other similarly situated employee who violated the "no-call/no-show" policy was treated any differently.[14]

Leone's contention that he had been "in contact with Elghaity during the week in question" is nothing more than a quarrel with the wisdom of Alliance's decision, and is certainly well short of showing pretext. *See Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."). The inquiry on pretext centers on the employer's "good faith belief," not

---

[13] Pretext has been characterized as a "lie" or "phony reason." *Jones v. Bessemer Carraway Medical Center,* 151 F.3d 1321, 1324 n. 16 (11th Cir. 1998), *quoting Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995); *See Silvestri v. Jupiter Inlet Colony,* Fla. ___ Fed.Appx. ___, , 2015 WL 3619652, 1 (11th Cir. 2015) ("[T]o prove that a reason is a pretext for discrimination, the employee must show that the employer's asserted reason is false, and that discrimination was the real reason.").

[14] Royer's confirmation that in her 17 years, "no other merchandiser has been terminated for the same reason as [Leone] . . ." does not establish that a similarly situated employee violated Alliance's "no-call/no-show" policy and was treated differently than he was. (Dkt. 48 at 52:4-10)

the employee's interpretation of the events. *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000). Indeed, it has been said in the context of pretext that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir. 1984). And any factual conflict about who made the ultimate decision is immaterial for purposes of summary judgment.

Since Leone is not able to rebut Alliance's legitimate, non-discriminatory reason for terminating him, summary judgment on his retaliation claim is appropriate.

Accordingly,

1.      Defendant's Motion for Summary Judgment (Dkt. 30) is GRANTED as to Counts III, IV, V, and VI. The motion is DENIED as to Count I.

2.      Count II is DISMISSED. Jurisdiction is reserved to determine the amount of attorney's fees to which Leone may be entitled under Florida Statute § 448.08.

**DONE AND ORDERED** this *13*th day of August, 2015.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Counsel of Record

19